Good morning, Your Honor. May it please the Court. Mark Labaton of Isaacs, Freedberg & Labaton on behalf of the appellant here. This case squarely raises just one, raises primarily one legal issue, and that is whether the 2007 decision by the U.S. Supreme Court in the Rockwell case abrogated this Court's decision in 1992, in the Wang decision. Can you help us understand why this issue wasn't raised below? The, Your Honor, the issue, the focus below was on the, primarily on whether the public disclosure prong was violated. And that's what most of the briefing was centered on below, not the original source exception. The parties below, and that was the focus of both the Court and all parties, and the Court never squarely addressed the original source issue. We pleaded with great particularity in our complaint that our relator was an original source with direct information. Most of the briefing and argument was centered on the public disclosure issue, and only very briefly was the original source issue challenged by the other side, and in a very cursory, conclusory way challenged it, and we asserted that we were original sources. So is the, was the district court's decision on the original source essentially on the pleadings? The district court's decision on the original source, it seems to be on the pleading. The whole, the district court issued a rather lengthy opinion, Your Honors, of over 11 single-space pages, and its original source discussion was really just a sentence or two saying that the relator did not meet this third judicially created prong without going into any detail. It didn't discuss the fact that the relator. But what, but your position before the district court, I assume, was that you were an original, that your clients were an original source. Correct, Your Honor. Yes, yes. And this Rockwell question is sort of an argument about why they're an original source, but it's not a different issue. Correct. Right. And in our pleading, Your Honor, our pleading is, the complaint is very, very lengthy and very detailed. It contains many, many allegations as to why our relator, who had very top senior-level positions in the company over many years, had specific original source knowledge that he provided to the government. His knowledge included his specific review and analysis of over 3,000 patient records. And we have paragraph and paragraph in the case. But no declaration. My understanding is that ultimately, I expect what the opposing party is going to get up and say is, oh, well, well and good about Rockwell, but you didn't establish the other two prongs of the original source because you didn't put in any declarations. So what do we do about that? Your Honor, the law, the law, as I understand it, is the declaration only becomes an issue for us once they specifically challenge with affidavits our information. And I would cite to the savage first. Affidavit, meaning the complaint? And the complaint. I would cite the savage first Glendale Union School case. And did they do that? They did not do that. Did they put in any declarations? They did not, Your Honor. They did not put, and I would just quote this one sentence from that case. It's on page 1040 footnote 2. And savage says, once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of subject matter jurisdiction. So they didn't put in the affidavit. We have a recent unbanked case that has something to do with this. Have you seen it? I'm sorry? We have a recent unbanked case that has something to do with how you, with whether a jurisdictional, factual jurisdictional question of this kind is an ordinary summary judgment or something else. It seems to say it's an ordinary summary judgment question. Can I ask a question?  I am not very familiar with the original document. I'm afraid I'm not going to remember the name. Unfortunately, I'm not remembering the name. Right. A month or two. Right. I don't recollect that, Your Honor. I think there is law out there though, I think also from the First and other circuits, that if there is some doubt in some situation like this, the proper course might be to remand the case and ask the judge to make, you know, make those findings on the original source, you know, whether our information was adequate. I think that would be the remedy if there is a question, because the judge specifically here said he was making his decision on original source just on that third prong. All right. So let's talk about the state of that. And I can tell you what my biggest concern is about what this panel could do. Assuming that we agreed with you about Rockwell, and several circuits have, right? Two circuits, Your Honor. Including the second, which was the source of this to begin with. Right. That was the source of our opinion. Then, however, we're pretty strict here about three Judge Pato's overruling earlier cases. And the little twist here is that after Rockwell, there was another Ninth Circuit opinion, which continued to apply Wang. So what do we do with that? Yes. I understand that. I believe Your Honor is referring to the Meyer opinion. Right. And in the Meyer opinion, the Court did cite Wang and it cited Rockwell. But I think the factual circumstances of that case and the reasons for the opinion are very important here, Your Honor. In the Meyer case, what happened was we had three different relators as a group, two of which had no independent knowledge of the, according to the Court, independent and direct knowledge of the allegations that formed the basis of their case. Only one did. And the one with knowledge later dropped out. And that relator dropped out because that relator filed its own wrongful termination case, settled the case, and dropped out of the False Claims Act case. So we had the situation that arose in that case where we had a case with two relators who clearly had no knowledge. And that's why the case couldn't go forward. But there's a whole paragraph about the third prong of Wang and how it applies, isn't there? There is a paragraph. And there were paragraphs in all of these cases. And the problem here, Your Honor, that arose in a number of cases, and it was recognized in a district court case in the Central District of California that here as well, not our case, the other pharmaceutical case that mentioned that there's a problem with the prong. The problem here is that the Supreme Court abrogated, as the Second Circuit recognized recently and clearly recognized. They said they couldn't do anything different but rule the way we're asking. They abrogated, by its Rockwell decision, all of these cases. But they didn't overrule it.  I mean, you get the logic of it, but then you get Schindler's Elevator and the footnote says there are these different, three different varieties out there and we're not deciding that case. And you're, in effect, arguing that the Court did decide the case a couple years before but didn't own up to it in Schindler's Elevator. Yeah. I think, Your Honor, that's a point well taken, Judge Clifson. And it's a point that was addressed in the district court case that was in the Second Circuit. The Judge Rakoff decision. The Judge Rakoff decision. The problem, I think, is that while it is very clear from Judge Scalia's textual analysis, and not just textual analysis, his analysis of the logic of the situation and everything else, that he was abrogating all of these cases. But he never explicitly overruled these circuit cases. And that's where the problem came. And Judge Rakoff, in his opinion, addresses this both in the text and in footnote number two of his opinion. He says, Given Rockwell's clear rejection of the textual premise on which Long Island Lighting, which, as Judge Bursar mentioned, is what our decision has been based on, relies, however, this Court's finding there is no other conclusion it can reach besides holding that Long Island Lighting's third requirement has been abrogated. Sotomayor, which is our case about when you can do this or can't do it, doesn't require a specific overruling by the Supreme Court. It's whether the reasoning is in concern. Correct, Your Honor. That is correct, Your Honor. So I'm more worried about Myers than I am about Schindler-Ellis. Right. Right. But Myers, as I mentioned, it was the fact that the existing relater – it was an odd case because all three of the relators met with the government and – I understand all that. Right. But it treated Wang as if it's Joe Schindler-Ellis. It treated it as well. For the purpose that – As well. But the reason it didn't go forward, as I mentioned, was because you had a related – you had two related – Didn't go forward, meaning why there wasn't a viable on bank hauls? Is that what you mean? Right. There was no – No one pushed it. No one pushed it because you had nobody who had standing to continue the case, and it couldn't be pushed. I think if you had a relater who had standing, a good attorney would have pushed that case. Of course, no one pushed it here below either, so we've got a little bit of a funny deal there, too. Right. And so just to – no one pushed it here either as well. But it is a problem that – and this goes to the equities that could affect lots of cases, not just ours. Ours is a very big case. We've alleged over a billion dollars of government funds that – a significant percentage that could be fraudulently applied. But the statute's changed. Well, the statute changed in 2010, Your Honor, March 2010. But as Your Honor is aware, there's a six-year statute of limitations on claims, and the U.S. Attorney's Office would – and I could say personally I handled some of these cases when I was an assistant U.S. attorney – takes a long time to investigate, and they're under seal. So we – this case is under seal, our case, for over three years. Some could be three, four, and five, particularly – Have there been any cases under the new statute dealing with the third prong of one? The third prong – I mean, is it clear that it either is or isn't there anymore? Well, the third prong has been changed in that – in two significant ways. One is it says even public disclosure can prevent a bar, but if the relator substantially adds information – and there have been cases in various circuits on whether – you know, what constitutes substantial information – their case won't be barred. Because the whole purpose of all these statutes is to try to encourage the partnership between the private sector and the – and to encourage people to come forward to work with the government to bring these cases. Do you want to reserve some time? I do. I will reserve the remainder of my time, Your Honors. And just make one point in regard to Judge Clifton's question, which I didn't get to finish, that in Judge Rakoff's opinion, he specifically, in footnote 2, addresses the Schindler's elevator. And also, the – these were very strong panels of judges, as is this panel in the two circuits that found that they needed to. Not a lot of shrinking violence in this line of work. No shrinking violence in this case. Thank you, Your Honors. Thank you. May it please the Court. I'm Greg Luce. On behalf of the defendant, then, Appellee, the Mayer court discussion is obviously of some interest. In disclosure, let me advise the Court. I was counsel in that case for the defendants, and I remember it rather well. It was my last Ninth Circuit argument. And Mr. Lebedin has done a fair but not completely fulsome discussion of what happened. It was correct that there were three relators. It is also correct that the Wong case was very central to that. It was central to it because of the three relators, only one could have possibly met the Wong standard. That was because Dr. Weatherford was the person who had filed the initial public disclosure, in this case a wrongful discharge or retaliation suit. But all that Mayer leads to is whether we can do this or whether we have to call it on bank. But the Paddell could call it on bank. I'm sorry, Your Honor. All that Mayer leads to is whether the three-judge Paddell could do this or whether we would have to call it on bank or in some other way inform the Court of what we were doing. But it doesn't preclude it. It doesn't decide anything as such. Your Honor, I agree. It does not. I think it does evidence the fact, however, that this circuit continues to follow Wong, and I think it correctly continues to follow Wong for the pre-2010. Tell me why that is. Pardon? Why? Do you have a substantive argument? Why? Yes, Your Honor. Rockwell has to be read in conjunction with Schindler Elevator. And with all due respect to Judge Rakoff, I don't think he gets to overrule the Schindler Elevator ruling. And I don't agree with his ruling for the following reasons. There was no ruling in Schindler Elevator. It said so. A big pardon? It said there was no ruling. Actually, in the Schindler Elevator Court expressly considered what was the information that the allegations of the complaint were based upon. And what the Court said there was that circuits reach different decisions. We do not reach that decision here. Right. In a nutshell, the reason that Wong continues, and continues perhaps by this circuit's differently than whether the Second Circuit chooses, and I don't think a summary affirmance constitutes a reversal of the Dick v. Long Island Lighting case, it may be some indicia of where they're going. The D.C. Circuit and Davis, both those circuits looked at the information upon which the complaint was based upon and concluded that that disqualifier, the bar, is set by the information that is in the public disclosure. That was the test. In Wong, the information was quite clearly as follows. To bring a key TAM suit, one must have had a hand in the public disclosure of the allegations that are part of one's suit. That is exactly what Rockwell held. Because the only questions that they held, they addressed in Rockwell, were these. Number one, what is the information that is determined to be the disqualifying or qualifying information for an original source? And second, what complaint governs when there's been amendments? The second issue is irrelevant here. Well, but first they had to get to the point of there being an ambiguity. Right? I mean, as I recall, Wong somewhat disagreed with the Second Circuit in the sense they didn't think it was clear, they thought it was ambiguous. And then they went to a bunch of policy and legislative history arguments.  They did, Your Honor. But they at least had to get to ambiguous, and Rockwell seems to pull the at least somewhat pull the rug out of that on a textual basis. It does, Your Honor. But again, what Rockwell was reaching was a different issue than what Wong goes to. Wong, yes, imposed a third issue. That is, have a hand in. In D.C., the district court, the D.C. Circuit Court, the relator to meet the test had to give the information to the government prior to the public disclosure. The Wong Court accepted the Dick v. Long Island lighting ruling, which proceeded it, in its reasoning that the relator had to do something more than just have information. They had to have had some role in notifying the government. So I think it's a little bit different and apart from the other obligation to give the other information to the Department of Justice. Are you aware of cases since Rockwell that have reached the result you're asking those to reach? Well, Schindler Elevator. Besides that. Meyer in this circuit. But I don't think it has been expressly addressed, Your Honor. That's my question. In that point, it has not. But I think that the early questions from this panel here are, why wasn't this raised before? And this is an argument that I submit has been waived. Well, it's an argument, you know. I mean, they took the position that they were, that he was the original source, right? They took the position that they were the original source. Right. Because, but they, no, I beg your pardon, Your Honor. They argued that they were, but their primary argument, the vast extent of their That was the vast extent of your position as well, and you were the moving party. Indeed. We focused primarily on that because it was irrefutable. There had been an Inspector General report that looked at this. There had been a series of appeals before and after their respective employment on exactly these issues. But it can't be that if I, if in the district court they say, well, we were an objective, we were an original source even applying Wang, and now they come here and they say, well, you know what? Wang doesn't even apply. That's a different issue. No, it isn't. It's just a different argument. I think the issue in determining whether or not there are qualifications What difference does it make? Has anybody been prejudiced by him? I'm sorry, Your Honor. I spoke over your ear. Has anybody been prejudiced by the fact that the issue didn't come up until now? It's a purely legal question. We'd have to decide in Genova anyway. What's the difference? No, Your Honor. I think it's a mixed question of fact and law. Oh, it is?  Well, Your Honor, I think it's a mixed question of fact and law on the basis that this is a subset of the issues that have to be considered in determining whether or not in the face of what is clearly a public disclosure, as Judge King found, and appropriately so, whether or not they have the direct and independent information upon which they're placed. Correct. And the question of whether that, whether there's the, there's any relevance to that question of their connection to the disclosure is a purely legal question. Well, Your Honor, the test for whether or not they have adduced sufficient evidence to establish their footing is, yes, independently the question. Well, is it really a hard question in this case, given the previous positions they had with the company? I mean, everybody, frankly, would be shocked if these people didn't know what was going on inside the company, given their positions. So it doesn't surprise me that didn't become a serious bone of contention before the district court, where the focus was being placed, as I'm sure it seemed like a good idea at the time, but the focus was on public disclosure. And now we get to this original source issue, and it does appear to be the case. We don't have evidence. We don't have a declaration. But there's also not been a dispute as to the positions these people held with the company. So is that a hard factual question? To the extent there's a factual question involved, is it really a factual question, or isn't it really mostly just a legal question of what the standard is? Well, Your Honor, I think if I understand the question correctly, you know, could the Court reasonably say? There may have been a question in some place. No, it's understandable, Your Honor. I just want to make sure I'm answering what you're asking. The fact set associated with their employment is a little bit more checkered than they would have you believe, and it was challenged. The emphasis that they made was on the public disclosure because they realized that there was a public disclosure issue and that their information derives from it. For example, Mr. Hartpence concedes in his briefing in the district court that of the five separate elements that he has alleged to be fraud, he only learned of four of them after his termination of employment. This was very much an issue that was involved. Mr. Hartpence's allegations were of a general nature. There were some specificity. But if you'll notice in all of the argument in advance in this Court, all the references about their direct and independent information go to only their complaint. So reminding them that they had the obligation to bear this to reduce the evidence. Well, that's the question, isn't it? I mean, as I – in that, did you put in a declaration? We submitted a series of declarations and exhibits, Your Honor. Primarily – How did you do with this question? Pardon? How did you do with the public disclosure question? But how did you do with this question? Well, they had to do with both. I would say primarily they had to do with public disclosure, but they were linked integrally because – But did they challenge the allegations in the complaint as to Mr. Hartpence's role, for example? They – well, yes, they challenged whether Mr. Hartpence would have known of the of some of the elements that were disclosed in the OIG report since some of it came out at or contemporaneous with his departure from the company. We went to the allegations of whether or not they – But it doesn't matter whether he knew what was in the OIG report anymore. That's the rockball problem. Well, Your Honor, it's also whether or not he knew it from his employment. Right. Or he learned of it from the OIG report. It was a factual issue. Because we submitted appeals, which Ms. Gidecki was responsible for – Well, let me ask you something. The district court didn't get into any of this. It just decided on the rockball question, right? Your Honor, I think that the opinion did not specifically address the direct and independent claim of that. Correct. All right. Nor did they deduce any information in the face of a factual challenge, which they were obligated to do. I'm not asking that. I asked you the first question. Did the opinion have anything to say about this? No. The district court has decided nothing about that. Right? Your Honor, I think – I don't know what the inference is. I think that it's clear that the district court found that they had not – that there was a public disclosure, and that they did not have a hand in the public disclosure, and it found moot while it was decided. So if we were to conclude, either us or an unbanked court or something, that he was wrong about applying that prompt post-Rockwell, why wouldn't we just decide that and remand the case and not decide anything about whether there was adequate evidence and everything else and let you guys fight it out in the district court about whether or not he waived it or didn't waive it or anything else? Well, because I think, Your Honor, that this is a very long case. This is a very expensive case. It's a case of which, as I understand it, they had the opportunity. But you would be deciding something the district court never decided on any ground. Well, Your Honor, I think the – I'm not sure, but I think that there was a clear failure for them to establish and meet their burden once it was challenged. What burden? I mean, the standard articulated by the district court in its order was the standard applying the Wang rule. If this Court would ultimately decide that Wang has been superseded, and there's an if attached to that, but if it would, we don't really have the district court speaking to the issue in the post-Wang rule or the First Circuit's version of it, for example. Why should we undertake ourselves to speak to that, and why should we presume that the district court would say they had an opportunity to present evidence and didn't, so I'm going to conclude it's waived, because I don't see anything in the district court's order that speaks in those terms. Your Honor, I wish that the district court's order were more fulsome about the consideration of direct and independent. Well, it wasn't all that fulsome. He didn't decide it. I mean, just say, yes, he didn't decide it. I can't agree with that, Your Honor. What do you mean? He didn't decide it. Because we briefed very extensively. Fine. Both the public issues. And there were three prompts, and he decided that you're one-on-one, and therefore he didn't decide the other two. Well, Your Honor, that may be how the judge ruled. He did find that our 12b-6 motion was removed. But I would offer this, that the Wong ruling itself is one that is well established by this circuit of 21 years in the to consider that it has been abrogated would require that it be clearly irreconcilable with the Supreme Court ruling. Or it would require this panel to call it on back. And it could do that. But I would offer to save some labor on this busy circuit by suggesting the following. And this is arcane, Your Honor. I would be the first to admit. But unfortunately, this is what I do for a living, is the arcana of this statute. And I would ask the Court to consider this, that the Rockwell ruling looked at really that one issue, was the information that was pertinent to the relator's standing, jurisdictional standing, about what the relator's information on their claim was, their allegation, or was it the public disclosure. And Justice Scalia said, we don't have to have them know what that was. Well, that's fine. The Wong rule does not preclude a person who can say that their claim is not based upon the public disclosure, and therefore, they can proceed as a relator. The Wong ruling, unlike Dick in the Second Circuit, unlike Davis in the D.C. Circuit, says it is pertinent as to what is the information that the relator pled. That's the information. That is entirely consistent with what the parties even agreed to in Rockwell, why Justice Scalia went so long. Perhaps it was to address some things. But what he did not do, and what the Court in Schindler-Elevator did not do, was address the based upon test. So there's one thing. Is it the information? But the based upon test was not addressed. In fact, they affirmatively said in Schindler-Elevator, we do not resolve it here. And they cited to that circuit split. That's in the body of the text. There isn't a further explanatory footnote. That is in the body. We do not resolve it here, whether or not that burden is met by establishing what it's based upon. It is not clearly irreconcilable. It may be different. This panel or the circuit may conclude that it should no longer be the rule in a fairly obsolescent set of cases. But it is not so clearly irreconcilable that this Court should do that. There's a lot of loose language in these cases at times, and there's even more loose language, no doubt, in the briefs submitted by the parties, which may lead to the former. But this is fairly inducible as a precise holding. In Schindler, applied to that, Rockwell only dealt with the one issue. I understand what you're saying. I'm not sure I do. Are you saying that Wang was based on the based-upon prong and not on the information prong? Is that what you're saying? Wang was based upon the information as part of that test, whether the information was based upon, and others, were the action based upon. But if you look what their quote, I believe it was at 1418 in Walling, Your Honor, page 14, it says, To bring a key tam suit, one must have had a hand in the public disclosure of allegations that are part of one's suit. In Dick and in Davis, the information was, were based upon part of the information in the public disclosure. That's the distinction. And it is critical to this Court's consideration, I submit. So it's, so what Justice Scalia said was, you don't have to know about what's in the public disclosure. You might still be a qualified original source. Wang doesn't say you can't be. Wang does add something. It says you have to have a hand in the public disclosure, but it has, for the allegations that are part of one's suit. It's a subtle distinction, but it really goes to the heart of the ruling. Can I ask one last question before you, Mr. Chang, because you are over time? There was a second issue in this case that we haven't discussed at all, which is the first-filed rule. And I see that there's a Supreme Court cert petition, a Supreme Court adjudication related to the first-filed rule. Is that case relevant to this one? In the D.C. circuit, there's a? The Kellogg-Brown case. Oh, Your Honor, I beg your pardon. I had a tendency, I just couldn't quite hear your question. My question is, is that case pertinent to the first-filed issue in this case? Yes, ma'am. I could not say it wasn't pertinent to it, but I don't think it would necessarily control here. The Campbell ruling? I don't know whether it controlled. It hasn't happened yet. So that's what I'm asking you. With the Supreme Court, there's been a cert grant. Is that right or not? Yes, ma'am. In the Fourth Circuit ruling in Carter, the Supreme Court has granted cert URI. The D.C. circuit has a different view, and there is an on-bank petition, and our guess is, perhaps no better than anyone else's, that that will probably be stayed or held depending on the outcome of that. The first-to-file rule here, we submit, shouldn't have any, would not necessarily be affected. Both of these cases were considered and dismissed and parlayed through the whole period in parallel, unlike the Campbell ruling for the Ninth Circuit, which held that a subsequent complaint. Because it's sequential. But obviously, there will be an interpretation of the first-file rule. It could have pertinence. Yes, Your Honor. Okay. Thank you very much. Well, thank you very much. I have a little more than a minute. Is that the right amount of time? Okay. One minute and five seconds. Okay. Thank you, Your Honor. The Schindler's Elevator, as the Court is aware, is a public disclosure case. The issue was whether a FOIA request is a report under the public disclosure statute. The Court in no way discussed or analyzed anything regarding original source. It did say there's a split among the circuits. There is no longer a split among the circuits. In fact, Your Honor, the two circuits already have ruled in the way that we asked this circuit to do. The Second Circuit was clear and the D.C. Circuit was clear. So the ---- Was the Second Circuit summary affirmance a published presidential decision? The Second Circuit. It was a ---- it was ---- we got it off Westlaw. I don't know ---- It is kind of peculiar because it didn't write anything. Right. It said they were affirming the opinion. Do you want to respond to the argument made by opposing counsel on the distinction that he thinks saves the third prong? I think it's a distinction without a difference. I see no distinction that can be made at all between any of these three cases whatsoever. And the D.C. Circuit, I read a little bit from Judge Rakoff's language, but it was very clear that Rockwell completely changed the premise. The two requirements, Your Honor, were the statutory requirements, direct and independent knowledge, and as well as providing the information to the government. And the question that Judge Scalia faced is what does allegations mean? Does it mean allegations in the public disclosure or the original or allegations made to ---- in the complaint? And he says you've got to interpret the text one way or another. I say it must mean a complaint. But he goes on from there. He said and there's good reasons for it. He says what value does it ---- what's important is what the relator's bringing to the table, his allegation. And there's problems looking at the ---- trying to determine whether the relator had a role in public disclosure. What do you do in circumstances? Scalia goes through this in great detail. When there's a reporter who has confidential information as a confidential source, how do you go and break that down? We must look at the allegations. Sotomayor, I have another question. Is there a separate rule in the Ninth Circuit or is it the same rule that the information has to be provided before the public disclosure, a timing rule? I thought there is a separate ---- there's a rule that's articulated that way, whether it's the same rule or a different rule. I understand it's the same rule and there was no issue here. We have alleged that we did that in the complaint that we gave it. They never challenged that at all. It was unchallenged. The government before the public disclosure. Right. They never challenged that. It was not challenged. There was a mountain of information given that was unchallenged. Your Honor, I would also mention that the issue as to their challenge to our original source, their challenge was very cursory. What they did in page 8 ---- 13 of their fly brief, in essence, is had a sentence saying, But they never ---- They didn't put an affidavit. We ---- They did know about it. Right. Right. We, I mean ---- The notion that he didn't know most, that four of the five allegations rose after he left. Some of them might have rose after he left.  His complaint alleges very specific allegations of his involvement while he worked there of the scheme of his review of documents. So it's the notion that he knew of it before and only disclosed it later or that he didn't learn of it until later? His complaint makes it clear that he knew of ---- he worked there for seven years and knew of almost this misconduct during the time he worked at there and provided the information. Okay. Thank you very much. Right. Thank both of you. And ---- Thank you, Your Honor. Could I just make one quick point? Yes. I mean, there is some confusion still even in this district by evidence in the Amster Court case where the district court said that the related did have a hand in the public disclosure, so that issue was moot in that district court case, but noted that Rockwell directly rejected the reasoning in these cases that created the third prong. Okay. So this is a problem that's ongoing still. Thank you very much. Thank you. Thank you, Your Honor. All rise.
judges: Rosenthal, Berzon, Clifton